Call our last case Kongsberg automotive Holding ASA v. Teleflex Inc Good afternoon, your honors. I'm Edward McNally. I represent the appellant Kongsberg. I'd like to reserve five minutes for rebuttal, please. The key point that I want to start off with is that no federal court that we can find has ever issued a stay of proceedings before it under the case. Never has that been done before. Here the parties agreed by contract to litigate their contractual dispute in the District of Delaware. The action was filed two years before the stay application was made, after extensive discovery was taken, after the discovery deadline had passed, after a pre-trial order was issued and a trial scheduled. They settled during that period of Correct, your honor. Kongsberg consented to an earlier stay. Correct, your honor. Consented to stays in Quebec and in Delaware. Well, sure. Don't tell us about the Quebec consent to the stay there. But here you're saying why you want to move the Delaware action, you don't want to move the Quebec action. We can't move the Quebec action. Well, you consented to a stay. In the Quebec. You consented to a stay until June of 14. And the motion papers that you've provided for purposes of us taking judicial notice show that there have been substantial talks about I don't know whether that's true or not, but you consented to the stay there. And here after, you know, settling nine of the ten claims and all you have left is a claim of indemnification, which I grant you is important. And having granted a prior, consented to a prior stay in this action, now you're saying that this is, you know, awful. I think it is awful. Where's the final order here? Pardon me, your honor. Where is the final order for purposes of our jurisdiction? There is no final order disposing of the case. If this case is appealable, it will be appealable under the exceptions that we relied upon for a stay that is indefinite in its duration. The reason why we. Well, why is it so indefinite? I mean, this is not, you know, some of the cases you cite talk about where there's a bankruptcy proceeding and Lord knows when it's going to be heard. But you really have partial control over how long the stay is because you're involved in the Quebec action, aren't you? Very little control. As the papers in the Quebec action show, the plaintiff in that action, who of course is going to be given deference when the plaintiff asks for a stay, which we did in objective, the plaintiff says, I want to not proceed in Quebec until all of these other state court in the United States cases are resolved. So I know how much liability I face and therefore how much I intend to shift to Telethax or Consberg. So the judge in that case, we agreed to consent to it. But we consented to it because we didn't want to waive our right to proceed in Delaware, which we have a contractual right to do. And indeed, the district court has. But you also want to proceed in Delaware because you want all of these other cases pending in the United States to be, you want this case to leave those. You say, the declaration of Rachel Baxter, she says, you know, a ruling from this court regarding contractual liability with respect to the design would help facilitate settlement negotiations in all of those cases. And you say, you know, ruling from this court is preferable to receiving a ruling from each individual court. What does this have to do with whether there's a final order in this case or just what Consberg would like? We're dealing with a legal issue. Is there a final order here for purposes of appeal? And if there is, did the district court abuse its discretion in granting a stay? I believe— We certainly thought that the Quebec action, that it could simplify issues before this court. And indeed, reading the motion papers, you know, you're talking about very little that has to be settled in Quebec. Now, maybe it will or maybe it won't. And maybe the motion papers exaggerate, as they tend to do most of the time in all courts. But we have narrow legal issues before us. Your Honor, we say that the stay here is indefinite because it ultimately depends upon what happens in all of these state court cases. Why? Because the case in Quebec will never be concluded until those cases—it won't even be started again. What does the Quebec action have to do with, you know, Joe Blow suing Consberg et al. in Montana? The Quebec case damage claim depends upon the resolution of the state court cases. So they're going to wait until every state action in the United States is decided before Quebec can rule? Is that your argument? That's not what—I'm not arguing that the Quebec court must wait until every case is decided. I'm arguing that the Quebec court will wait until every such case is decided. That's up to the Quebec court and the plaintiff. I don't see any reference to that. Yeah, I was going to say that. I'm hearing that for the first time. I mean, it's not in the order of the Quebec court. I don't see any mention in the pleadings or at least the ones that are presented—that you've presented to us. The Quebec court order is premised on its recitals, and those recitals say that there are other pending cases, and we would prefer—the plaintiff would prefer—PRB would prefer to wait. Where is that in the record? Where does it say that? Where is it in the record that Quebec action likely will not move forward until all these others are resolved? Where does it say that? Or even that they would prefer it? I see that in Rachel Baxter's declaration, and I see it in—but I don't see that in the order of the Quebec court. The Quebec court simply ordered granting the state. Granting the state on your consent. That's all it said. And that's the second time it said it, and it's going to—and I think the only rational way to look at it is going to say it all over again. Well, it seems so. If—because of the recitals by PRB that it wants to wait until the other cases are resolved one way or the other. That's what it said. Where does PRB—where is that said? I mean, I— You have to look at the recitals in the Quebec court's order that refer to the reasons why it would like to wait. And those reasons are as extent today— Where are—where is that? Where are the reasons of the Quebec court as to why it's granting the state? Stipulation A580. We have your attorney and your attorney and your Canadian attorney talking about consenting to the Quebec action and translating the order. And he says in—he says in translating the order and considering the settlement talks, for these reasons, the tribunal grants the motion and stays the proceedings. I thought it was really to— Well, it's in the recitals that are attached to our motion for the court to take judicial notice, and it's in the order attached to it. My recollection is, which I'm trying to get to your second question, Judge Barry— Yeah, well, you said the reasons. And your Canadian attorney translates the relative excerpts and the representations made by the attorney and considering consent to the motion, considering the settlement talks, grants the stay. But you said about all these other cases that that's the reason they're granting the stay. The court didn't make that finding, at least not at this record. The court did not make that finding, but it's the only rational reason you can get from reading why the plaintiff in that case would wait. That's what it says. Did you say—did you propose to Judge Sleet that essentially the Quebec action is just never going to proceed? Yes. That was our argument. I mean, we recall that at the time we made the original argument for the act, we provided an affidavit that said the case can't proceed until at least 2016. And we pointed out that the case had been stayed, notwithstanding it was going to be even longer than that. Well, that was the earlier stay. That was the earlier stay. The second stay came in after Judge Sleet ruled. Correct. Okay. But before Judge Sleet— So after Judge Sleet ruled, another stay came in on your consent in Quebec, right? That's right. And the thrust of that motion was settlement talks as to the remaining dispute. That's right. Okay. So why, even in retrospect, couldn't it have been reasonable that if that were the remaining dispute, were to settle in Quebec, that would have been a heck of a lot easier here? It would have been a heck of a lot—the remaining dispute that you're talking about being settled in Quebec would have been the disputes involving all the other pending court cases. That they had been settled in the Quebec action would have had a dollar number, which they would have proceeded to deal with. Well, we don't know that. I mean, we don't know enough about the Quebec case. Your Honor, I'm out of time. I'm sorry, Judge Barrett, I couldn't answer your second question. I reserve five minutes. I'll try to pick it up at that time. Thank you. Good afternoon. And may it please the Court, Sean Ballew of Ballard Spar on behalf of the defendant, Teleflex. Your Honor, to meathead on the question here about the existence of a final order, it's clear that there is no final order. And what that does— Well, except Judge Sleeve just sent this up to Canada, washed his hands of it. I'm not—you know, it stayed until they decided. Doesn't that effectively throw them out of court? No, Your Honor, because on the first issue of whether we're even properly here on a final order, they have to make an argument to get around the clear precedent and the obvious situation that only final orders can be appealed to this court. Right, but if they're effectively thrown out of court, or if it's a stay of indefinite duration, both of which seem to apply, then how do they not apply? All right, well, Your Honor, they coin a phrase, temporal determinativeness. And they say that they are out of court because there's no time limits. Well, as Judge Barry noted, that is an effect that they agreed to, that they consented to. Actually, in footnote 5 of our papers, it talks about what the procedure is in Canada. And procedure in Canada is actually very quick in the sense that they have to go to trial within 180 days. Now, they've agreed. You know, that's disingenuous. We should accept it could be 2016. It could be. Or you could settle the case next month, and there could be no time at all. Let me address this, Your Honor. They have to make this unique, that this is a unique circumstance, this is some anomaly. And to do that, they say that this stay was granted at the end of the litigation when all the discovery was completed. Now, that's not true. And Judge Sleet actually made that clear in his footnote opinion. He said, look, there are issues as to whether there's additional discovery that needs to be done. And from a temporal context, if you look at the dates on which the pleadings were filed, this issue, this issue about these third-party claims, Your Honor, that only arose when BRP filed an amended complaint in Canada. And that amended complaint was filed in October of 2011. And that's at A750. We were already done discovery when BRP filed this amended complaint. Now, what they tried to do is they tried to bootstrap that issue into the pretrial order, and we objected to that. So when Judge Sleet was looking at the case that was before him and what was stayed and then what they were asking to push forward with, he noted, which we thought was clear, that the issue that they really are pressing forward on now was not even part of the litigation. So we're actually, we're not at the end of the litigation. We're actually at the very beginning. Let's assume there's jurisdiction here. Maybe there isn't. Let's assume there is. And there's a case in Delaware involving two parties to an agreement to determine what the agreement means, what the excluded liabilities are. And that agreement contains an agreement within itself that the parties agree it should be brought in Delaware and litigated in Delaware. And it's a pretty extensive provision. Delaware law applied and transferred. I mean, the clear agreement of the parties was this should be heard in Delaware and it's that agreement that's at issue. Why should the court be able to basically duck that and go against the wishes of the parties and even hear argument that that shouldn't happen when there is an agreement to that effect? The court will hear that. Ultimately, this case will be back in front of the judge in Delaware. Well, that's okay. That's an issue. Will it be back? And when will it be back? And how will it be back? And will it have been decided based on, will issues have been decided based on Delaware law? It sounds like the judge is thinking this is going to be res judicata in Quebec. Your Honor, that really speaks to the prudence of what the Chief Judge did. And the language in the purchase agreement states that they're entitled to indemnification for, quote, any liability arising out of the excluded assets. They look to that language and say, hey, this 2006 contract was an excluded asset. The problem with that argument is if you look at the Canadian complaint, they're being sued under an entirely separate contract, a 2007 contract. So what is going to happen here is ultimately in Quebec, somebody is going to have to make a decision on what the liability is. Was it a design defect? Was it the way that it was manufactured? Was it the way that the materials were put together? Was there no liability at all? Was this BRP's fault in how they did it? Was it driver error? So why, but why should the Delaware action await anything that goes on in Quebec? Because that, the Canadian action will ultimately determine what the liability is. And if the liability, if there's no liability, if the court finds that this is BRP's problem, then we're going to file a motion to dismiss based on the fact that this is not a liability arising out of an excluded contract. Now, they may, you know, I think creatively that's very broad language. And we don't really know the way the Quebec action is going to proceed. Do we? We have no idea what will be the litigation strategy, what will happen, and why should they be held hostage for this? Well, they're a hostage in their own prison, Your Honor. They agreed to it. So to now come back and say we don't. Well, let's be fair. They agreed to a stay till June 14, 2014 in the Quebec action, not ad infinitum. Right, Your Honor. And I think, look, if we're looking at this from an abuse of discretion standard, assuming that there's a final order here, I think there's some things that we can point to that show this is actually a fair result. Your Honor made a comment about they want this case to sort of push the resolution. And we believe that's putting the cart before the horse because what they're going to do, if we have to litigate this case in Delaware, I'm going to have to litigate every issue that would have been litigated in Canada without one of the parties who's refused to participate. I am going to have to get evidence. Why? The agreement is between the two of you, and the language of the agreement is between the two of you has nothing to do with BRP. But, Your Honor, I cannot establish that this is not a liability arising out of an excluded asset without litigating the underlying case. I would have to go and prove that whatever defect or whatever problem BRP alleges occur with this, I'd have to go prove that it was not something that was under the 2006 contract. So this is actually the prudent way to go because that court has all three of the parties. That court will determine if there is liability and what the source of the liability is. Now, we will be back in Delaware. There's possibly four outcomes out of Canada. The first would be one where both Kongsberg and Teleflex prove that neither of them had any liability. Well, now the case isn't going to go forward in Delaware at that point because they don't have an excluded asset. The court on the other extreme, the court in Canada could say that this was all Kongsberg's fault under this 2007 contract. They manufactured it improperly, in which case it's not res judicata, but they're not going to have a very strong argument to go back there. Now, there's also the possibility that the court finds that we're totally liable, and then I think there will be some discussions at that point. That would be something that would be very favorable to them. Now, here's the outcome that may occur. I'm not a Canadian products liability expert, but there may be some finding in Canada that we're both on the hook, and then that is when we're back in front of the judge, and it's an issue of allocation. It's an issue of contract interpretation as to whatever that liability was, whatever that finding is. Is that a liability arising out of the excluded assets? Now, I think that that's very broad language, so the point of it, Your Honor, under certain circumstances, it's clear that the Delaware case would be resolved just by virtue of what the factual finding would be, but that's not res judicata. They could still come in and argue that under some, you know, compromise finding, that this is actually the type of exposure that they were negotiating for indemnification on. So that's the right outcome, and that's where... Mr. McNally said he wants to wait until all of these state cases get decided, and I don't know what the statute of limitations would be, whether they'll keep being filed. I don't know, but what is your response to that? This is not all entirely on the record, and we objected in the pretrial order to them bootstrapping in evidence of these third-party claims, but I can represent that we are defending the third-party claims. Ballard Spahr is defending the claims. Well, we have it in our appendix. We have Ms. Baxter's affidavit. We have the accompanying, I think on which side of the appendix, the other, following it or proceeding it, talking about these other actions, so they've been presented to us. Your Honor, so I think this is speaking to a notion of fairness, whether it's fair for them to be in the position they're in, and the reality of it is if we went back to Judge Sleet today and your order went back to him and said, look, you cannot stay. They have to have their day in court. There's no telling that this case in Delaware would get to trial and resolved before what was pending in Canada would, and I can tell you based on what I know of the products liability cases, they are almost certainly all to be wrapped up. Most of them are wrapped up, but they would certainly be wrapped up before this case made its way back to trial, and there could be more because the products in the industry in the country. Well, that's the point. I mean, this seems to be, if we were, it could go on ad infinitum here waiting for Judge Sleet, and you all would have to wait until finally one other plaintiff, there are no more plaintiffs in these data. Correct, correct. I mean, I don't know. Your Honor, the answer to that question is so even if we went back and Judge Sleet presented the narrow issue here, is this a liability that arises out of an excluded asset? I mean, I don't know how he can even determine that yet because if you look at the BRP complaint, now our friends say that we were on the hook for design. That's the basis of their argument, and they say this was a design defect, and because design was under the 2006 contract, we're on the hook. That's their argument. The problem with that is that's not what BRP is arguing. If you look at the Canadian complaint, and I won't quote it, but they basically say they had design responsibility. They had manufacturing responsibility. I mean, I think based on strict liability issues, they're on the hook. They were the company that gave the product over. So in terms of fairness, the other part of it, Your Honor, is we are at an extreme disadvantage in defending the case based on the mechanics of what issues need to be done plus the fact that BRP, and the judge noted this, refused to cooperate. Now to give you a sense of that, if you look at the confidentiality order in this case, not in this case, in the Canadian case, they wrote it specifically to preclude us from using the documents that they produced in Canada in the Delaware case. So I don't know what reason that would be for that other than gamesmanship, but if BRP wants to come down to Delaware, we're happy to adjudicate the entire dispute in front of the chief judge. If these cases were to proceed along parallel tracks, talk to the issue of inconsistent results or inconsistent verdicts. Your Honor, so the... Because the facts here, it's tough to get your arms around. It's complex. The way it all would work. Well, the way that it would work is I would have to litigate the entire dispute that's now currently pending in Canada, because I have to prove the negative that this is not a design defect of our making, and thus is not a liability arising out of the excluded asset. So it is a circumstance where somebody will have to... That's the preliminary issue that needs to be decided. Somebody's going to have to decide this. The issue is why shouldn't it proceed before Judge Sleet when the parties agreed that that's what should happen. Because the party driving the proverbial bus, Your Honors, is a French-Canadian company who would prefer to litigate their lead dispute in a French-Canadian courtroom. And for whatever reason that may be, that's why we're in... That's why they're in the position they're in. Well, they're also... They are the plaintiff in this action and a defendant in the Canadian action. So maybe that's another reason for wanting to go forward here. You know, I think you hit the nail on the head. I mean, what they're trying to do is push this case forward and get it settled so that they can avoid the meatier issues up in Canada. Because if you look at their... And my time is up, so I'll conclude. The essence of this, I believe, is BRP and Kongsberg have a continuing business relationship. So it bodes better for them to focus their sights on us than it would be to defend a case against their business partner. So I think that's... You know, I'd like to be a conspiracy theorist, but that's what I think is driving this. Thank you. And this was an honor. This is my first time in front of your court. All right. Thank you. You're welcome. Your Honor, thank you. I want to focus on why there's a Delaware case and what we're trying to get out of the Delaware case. I don't care what happens in any of the other cases in the state courts, Judge Barry. In Delaware, we ask for something very simple. As page A169, we request that the court enter a declaratory judgment that the BRP claim is an excluded liability as defined in the purchase agreement. What does that mean? The excluded liability idea is that if Teleflex did something under a contract, such as, this is undisputed, design this part, we don't want to have that liability. So that if in a later case, Kongsberg, as the manufacturer, is deemed to be liable, and it's because the part was defectively designed, Teleflex is supposed to indemnify us. It's just that simple. So that in Canada, if the Canadian court comes back and says, Kongsberg, you are liable because you sold us a defectively designed part, then it will be the problem of Teleflex, because that goes all the way back to what Teleflex did, and that's an excluded liability that they agreed to pay. All we are asking for is that the district court in Delaware decide what the purchase agreement means in that respect. Does it mean that because we signed an agreement in 2007 to manufacture these parts, that that means that we are now no longer entitled to the protection of the purchase agreement? That's all we seek. It's just a question, what does the purchase agreement mean? The damage claims that my friend says will have to be adjudicated, I completely agree with him. But he says he's going to have to prove everything that is happening in Canada as part of the Delaware action. That's completely wrong. You disagree with him? It's completely wrong. Once we get that declaratory judgment in Delaware that they are responsible under the purchase agreement, then the Canadian court can do whatever the Canadian court's going to do, and if it ends up, and that's where the damage claim is going to be litigated. In Delaware, we're not litigating any of these damage claims. It's not a damage case. You just said you don't care about the other cases pending throughout the United States. You said to me earlier you want them to move first before this does, and, in fact, you fault Judge Sleek for not dealing with that issue. Judge, Barry, if I said that, I misspoke. What I said was the plaintiff, PRB, wants those cases to be resolved so that it determines how much money it owes in the state court cases so that it can sue for that amount in the Canadian case. But you said in your appellate briefs, in your briefs to us, one of the reasons you want us to reverse Judge Sleek is that you had presented the argument that those cases, this case will have an impact on those. You want this to be decided first. Sure. And now you're saying you don't care about those cases. Well, I don't care about what speed they litigate on. What's going to happen in the state court case? What's going to happen is the jury comes back and says, okay, here's liability because the part was either, A, manufactured incorrectly, or, B, there's a defect in the design. Would Canadian law be applied in the Quebec action? Yes. Is it different than the relevant U.S. law? I cannot answer that because I'm not an expert. I do know that the Canadian complaint makes allegations such as the warranty of fitness for intended purpose that strike me as similar to American law. But the point I'm trying to make is that if it is now clear, because of what the district court decided, that the purchase agreement provides us for protection from claims asserting a design defect, then that's all we need and that's all we seek. The Canadian case can go forward. Whatever the Canadian case decides, it decides. If it decides that we are responsible because of a manufacturing defect, we're stuck with that. If it decides we're responsible because we sold an improperly designed product, then we immediately have a judgment that that's Telefex's problem. Whatever the numbers are, and if my friend wants to defend in claiming, for example, that all of these tort cases are really driver irresponsibility or driver error and there's nothing wrong with the part, he can defend that all he wants. That's not even involved in Delaware. So Delaware has really no need to prove why the vehicles failed. We're not asking the court to decide that. We're asking the court simply to decide what the purchase agreement means. That's it. My time is up. I thank the court. Thank you very much. The case is well argued. We'll take it under advisement.